UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 00-172(01) (JMR/FLN)
Civil No. 05-157(JMR)

| | |
|---|---|
| UNITED STATES OF AMERICA, Respondent, v. MICHAEL TRAVIS WILLIAMS, Petitioner. | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255 |

PROCEDURAL BACKGROUND

Defendant Michael Williams was charged in a multi-count indictment with his co-defendant Roxanne Abfalter. Both defendants were charged in count 1, under 18 U.S.C. § 371, with a conspiracy to: (1) make false statements and representations to licensed firearms dealers to obtain firearms and (2) to violate 18 U.S.C. § 922(g) in the possession of those same firearms by a prohibited person. The conspiracy count detailed a series of overt acts in which Abfalter and Williams obtained firearms from gun stores by using Abfalter as a "straw purchaser" to buy guns for Williams, because he was a prohibited felon.

Williams was charged in count 2 as a felon in possession of firearms. That count set forth one violation of 18 U.S.C. § 922(g) as a continuing course of conduct between November 29, 1999 through January 22, 2000. The weapons alleged in count 2 were the ones listed in the overt acts in the conspiracy count. Counts 3 and 5 touched only upon defendant Abfalter. Count 4 charged defendant Williams with being an unlawful user of a controlled substance in

possession of a firearm. Counts 6 though 15 charged both defendants with making false statements on firearms transaction records in violation of 18 U.S.C. § 924(a)(1)(A) and 18 U.S.C. § 2. Unlike count 2, counts 6 through 15 each covered a specific overt act from the conspiracy count concerning false statements in the purchase of firearms between November 29 through January 20.

The jury convicted the defendant as to both aspects of the conspiracy in count 1, count 2 and counts 7 through 13. Count 1 had a 5-year maximum sentence, count 2 had a 10-year maximum sentence and counts 7 though 13 each carried a 5-year maximum sentence.

At sentencing, on December 19, 2001, this Court sentenced the defendant to a 175-month prison term. <u>See</u> <u>United States v. Williams</u>, Cr. No. 00-172 J & C at page 3.

In reaching its sentence, the Court divided the nine counts of conviction into three groups, and within each of the three groups imposed consecutive sentences, so that each group totaled a sentence of 175 months. The Court then ordered each group concurrent to the other two groups. Specifically, the Court stated:

> I will sentence you to 120 months on count 2 and followed thereafter by a 55-month sentence on count 1 to be served consecutively. I will also sentence you to 60 months on count 7, 60 months on count 8, and 55 months on count 9, each to be served consecutively. So 7 will be served before 8, 8 will be served before 9, but the 7, 8, and 9 will be served concurrently with the previously imposed sentences imposed on counts 2 and 1. I will then

> sentence you to 60 months on count 10, 60 months on count 11, and 60 months - and 55 months on count 12. Those sentences are to be served consecutively. First, the ten years - or the 60 months on count 10, then the 60 months on count 11, then the 55 months on count 12. All three of those to be served concurrently with the previously imposed sentences. Thereafter you will serve an additional months on count 13, that to be imposed concurrently to the previously imposed blocks of sentences. Your total is 175, but I've done it so it's a 175, a 175, a 175, all served concurrently with each other.

Sentencing Transcript, December 19, 2001 at pages 90-91.

Williams appealed his conviction and sentence, which was affirmed by the Eighth Circuit on August 22, 2003. See United States v. Abfalter, 340 F.3d 646 (8th Cir. 2003) (sub nom. Williams). Williams filed a Petition for Writ of Certiorari with the United States Supreme Court which was denied on January 12, 2004. United States v. Williams, 124 S.Ct 1112 (2004); see also (Cr. Docket No. 181).

On May 14, 2004, Williams filed a motion for production of grand jury transcripts from his criminal case, and was denied. See Order dated July 19, 2004, (Cr. Docket No. 185).

Williams filed this pro se § 2255 habeas motion seeking to vacate, set aside or correct his sentence on January 24, 2005.

## ARGUMENT

### I. WILLIAMS § 2255 MOTION SHOULD BE DENIED BECAUSE HE HAS FAILED TO MEET THE HEAVY BURDEN NECESSARY TO DEMONSTRATE AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Williams claims that his defense counsel was ineffective for failing to argue that count 2 of the indictment was duplicitous, specifically that because count 2 concerned multiple firearms, it is not possible to tell whether the jury unanimously agreed on a specific weapon to convict. Count 2 alleged that between November 29, 1999 through January 20, 2000 Williams, a convicted felon, possessed certain firearms. The firearms referenced in count 2 were those listed in the overt acts set forth in count 1.

Duplicity is the joining in a single count of two or more distinct and separate offenses. "The risk behind a duplicitous charge is that a jury may convict the defendant without unanimous agreement on a particular offense." United States v. Moore, 184 F.3d 790, 793 (8th Cir. 1999).

To prevail on a claim of ineffective assistance of counsel, a defendant must show both that "counsel's performance was deficient" and that the defendant suffered prejudice as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984).

To show prejudice, a defendant must show more than a reasonable probability that the results of the proceeding would have been different but for counsel's errors. Id. at 694. See also El-Tabech v. Hopkins, 997 F.2d 386, 389 (8th Cir. 1993). A defendant must show that the proceedings were rendered fundamentally unfair or unreliable by counsel's deficient

performance. El-Tabech, 997 F.2d at 389. Mere speculation cannot satisfy the high standards set forth in Strickland. Williams is unable to meet this burden. In essence, Strickland requires that the error result in actual prejudice to the defendant. See id. at 687.

The simplest response to the defendant's argument here is that even if count 2 were duplicitous, which it is not, it would not matter. Williams' sentence would be the same even if count 2 were vacated.

As noted earlier, the Court sentenced the defendant to 175 months by running three separate groups of counts of convictions consecutively to equal 175 months each, and then making each group of 175 months concurrent to each other. Even if count 2 is vacated it would make no difference, as the defendant's sentence would remain the same. Therefore, he has suffered no actual prejudice and the Court need go no further in its analysis. United States v. Alanis, 265 F.3d 576, 591 fn. 10 (7th Cir. 2001).

There is an entirely separate reason that the defendant's claim here fails to meet the standard of "actual prejudice". The Court did provide several unanimity instructions during the course of its charge to the jury. It gave a general unanimity instruction, Trial Transcript IV, 117, and it gave several specific unanimity instructions concerning count 1, the conspiracy count, (that the government need only prove unanimously one overt act,

Trial Transcript IV, 110 and need only prove one of the two objects of the conspiracy, Trial Transcript IV, 112). These instructions are sufficient to protect the defendant from a non-unanimous verdict as to count 2. See United States v. Lucas, 932 F.2d 1210, 1220, (8th Cir. 1991) (the mere fact that an instruction could conceivably permit a jury to reach a non-unanimous verdict is not sufficient to require reversal when the jury has been instructed that it must reach a unanimous verdict). See also United States v. Gruenberg, 989 F.2d 971, 975 (8th Cir. 1993).

Any error is also harmless because the jury's verdict clearly evidences that it unanimously concluded beyond a reasonable doubt that the defendant was guilty of seven specific instances of possession of a firearm, based upon the jury's decision to conviction him of counts 7 through 13. The overt acts in count 1 essentially set forth a scheme where the two defendants would go to several gun stores, buy guns (overt acts paragraphs 13, 15, 17, 19, 21, 23, 25, 27, 29 and 33) and falsely fill out the required firearms transaction records necessary to obtain the same weapons (overt acts 14, 16, 18, 20, 22, 24, 26, 28, 30, and 34). Count 1 alleged a conspiracy to make false statements and representations concerning the purchase of the firearms from the guns stores and to have a prohibited person, Williams as a felon, possess these same firearms. Count 2, the felon in possession count challenged by the

defendant as duplicitous, incorporated by reference the above-mentioned overt acts.

The defendant was convicted on counts 7 through 13, with making false statements on firearms transaction records. The false statements convictions concerned the very firearms incorporated by reference into count 2. The defendant could not be guilty of counts 7 through 13 unless the jury also found that he possessed the very guns which relate to the records in counts 7 through 13. (The counts alleged that Abfalter claimed she was the actual purchaser of the firearms named, when she was actually purchasing the firearms with and for Williams.)

Therefore, the jury had to unanimously reach a decision as to each firearm incorporated by reference into count 2 for which he was convicted in counts 7 through 13. Under these circumstances any error is harmless as the jury reached a unanimous verdict on these specific firearms. See United States v. Fredette, 315 F.3d 1235, 1243 (10th Cir. 2003) (where sufficient evidence to convict on either of alternative theories where no specific unanimity instruction given, any error was harmless).

Nor can Williams show his attorney's performance was deficient. To show that "counsel's performance was deficient", the defendant must show that counsel's errors were so serious that "counsel was not functioning as 'counsel guaranteed' by the Constitution." Strickland, 466 U.S. at 690. He must specify acts

or omissions on the part of counsel that were not the "result of reasonable professional judgement" id. The Court's review of counsel's performance should be highly differential. Id. at 689. Moreover, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See id.

The defendant argues that count 2 was duplicitous because it listed a number of separate specific and different instances of felon in possession, violations which he argues should have been indicted in separate counts. While the defendant is correct that the Eighth Circuit has held that it is multiplitous to indict as separate counts all the guns seized in one episode of possession, see United States v. Kinsley, 518 F.2d 665, 668-70 (8th Cir. 1975) (simultaneous possession of multiple firearms constitutes one crime), the converse is not required.

The Eighth Circuit has held that the government properly indicted as separate crimes, groups of firearms found in separate searches on separate days. See e.g. United States v. Peterson, 867 F.2d 1110, 1115 (8th Cir. 1989) (guns from each search on each day properly a separate offense) abrogated on other grounds, Horton v. California, 110 S.Ct 2301 (1990); see also United States v. Walker, 380 F.3d 391 (8th Cir. 2004) (citing Peterson for proposition that in Eighth Circuit, unlike other circuits, it is proper to indict ammunition and firearms found in one location in separate counts).

However, that does not preclude indicting in a different manner, where the various acts are a continuing course of conduct. As the Seventh Circuit noted in United States v. Buchmeier, 255 F.3d 415, 421-25 (7th Cir. 2001) under 18 U.S.C. § 922(g):

> ... an indictment charging multiple acts in the same count, each of which could be charged as a separate offense, may not be duplicitous where these acts comprise a continuing course of conduct that constitutes a single offense.

255 F.3d at 421. Noting that while the government could charge multiple counts under § 922(g) because the separate incidents permitted it, the government was not required to do so. Id.

The Seventh Circuit did place one limitation on this approach, which is to treat the § 922(g) counts consistently within one indictment:

> However, once the government chose to charge Buchmeier with acquiring and receiving all ten firearms [from three searches], we find that it was required to either charge him with one violation of § 922(g) ... by way of a continuing course of conduct or with three separate violations ... in order to avoid formulating either a duplicitous or multiplicitous indictment.

255 F.3d at 423-24. The indictment here consistently treated the § 922(g) violation as one course of continuing conduct, and thus only required one count.

When count 2 is viewed as one continuing offense, no unanimity instruction was required because Congress did not intend the possession of a particular firearm to be an element of § 922(g); United States v. DeJohn, 368 F.3d 533, 541-42 (6th Cir. 2004)

(because particular firearm possessed is not an element of § 922(g) court did not commit error in failing to give unanimity instruction where multiple guns involved). As a result, the defendant can meet neither prongs of the Strickland test.

## II. DEFENDANT'S REQUEST FOR RETROACTIVE APPLICATION OF BOOKER SHOULD BE DENIED

Williams also seeks to have his sentence vacated because (1) he believes the Court sentenced him to a period of time greater than the statutory maximum of the different statutes involved and (2) it was in violation of Blakely. The first argument is a result of a misunderstanding by the defendant as to the fact that each of the counts of conviction carries a separate statutory maximum and that the counts can be made consecutive to each other.

The second argument would require the Court to retroactively apply United States v. Booker, 125 S.Ct 738 (2005) to a § 2255 proceeding and should be rejected.

Because the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005) governs all Blakely claims concerning the Federal Sentencing Guidelines, the sole issue here is whether Booker is retroactive.[1] Four circuits have considered this issue and all four have held that Booker is not retroactive. Humphress

[1]Blakely reserved the question as to its applicability to the Federal Sentencing Guidelines. 124 S.Ct. at 2538 n. 9. Because Booker expressly decided that question, the issue is whether Booker, not Blakely, applies retroactively. See Humphress v. United States, 398 F.3d 855, 387 (6th Cir. 2005). McReynolds v. United States, 397 F.3d 479, 480-81 (7th Cir. 2005).

v. United States, 398 F.3d 855 (6th Cir. 2005); McReynolds v. United States, 397 F.3d 479, (7th Cir. 2005); United States v. Price, 400 F.3d 844 (10th Cir. 2005); Varela v. United States, 400 F.3d 864, (11th Cir. 2005). No circuit court has held to the contrary.

The analysis here is controlled by Teague v. Lane, 109 S.Ct. 1060 (1989), where the Supreme Court established a three-step analysis to determine whether a new rule of criminal procedure applies to collateral review: 1) whether the defendant's conviction was final at the time the rule was announced; 2) whether the holding announces a new rule of criminal procedure; and 3) whether the new rule falls into one of two exceptions to Teague's non-retroactivity rule.

The defendant's conviction was final prior to the decision in Blakely and therefore it was final prior to Booker. The only issues to be resolved are whether Booker was a new procedural rule and if so whether it falls within Teague's exception for a watershed ruling. (The other Teague exception to non-retroactivity - where a new rule prevents the lawmaking authority from criminalizing certain kinds of primary, private individual conduct - is not implicated by Booker). See Teague, 109 S.Ct. at 311.

**A. Booker Announced A New Procedural Rule**

There is no question but that Booker announced a procedural rule. The Supreme Court in Schriro v. Summerlin, 124 S.Ct. 2519,

2523-24 (2004) held that the rule set forth in Ring v. Arizona, 122 S.Ct 2428 (2002) which required a jury rather than a judge to find the facts essential to the imposition of the death penalty was procedural in nature, not substantive:

> Rules that allocate decision-making authority in this fashion are prototypical procedural rules, a conclusion we have reached in numerous other contests.

124 S. Ct. at 2523. The same analysis obviously applies to Booker. See Humphress, 398 F.3d at 860 at n. 1; McReynolds, 397 F.3d at 480-81; Price, 400 F.3d at 845-46; Varela, 400 F.3d at 866-67.

Nor is there any question but that the Booker rule is new. A rule is new if it breaks new ground, or put another way, if the result was not dictated by precedent existing at the time the defendant's conviction became final. Teague, 109 S.Ct. at 1070. Schriro, 124 S.Ct. at 2522. See also Beard v. Banks, 124 S.Ct. 2504, 2511 (2004) (test is whether the unlawfulness of the conviction was apparent at the time to all reasonable jurists).

Booker clearly created a new rule. First, the Supreme Court said that it had. The Booker court expressly stated that its holding applied "to all cases on direct review". In doing so it quoted from Griffith v. Kentucky, 479 U.S. 314 (1987) that:

> [A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final. (emphasis added)

125 S.Ct. at 769. The Booker court was therefore clearly signaling that its rule was both new and procedural. See Humphress, 398 F.3d

at 861 (this discussion would be wholly unnecessary had the rule been dictated by precedent). See also McReynolds, 397 F.3d at 481 (Blakely reserved decision about status of Federal Sentencing Guidelines, so Booker itself represents a new rule).

Booker clearly meets the test set forth in Beard v. Banks, that the rule was not apparent to all reasonable jurists. In Apprendi v. New Jersey, 530 U.S. 466 (2000) the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt". 530 U.S. at 490. As the Seventh Circuit noted in Simpson v. United States, 376 F.3d 679, 681 (7th Cir. 2004), before Blakely was decided every federal court of appeals had held that Apprendi did not apply to the Federal Sentencing Guidelines calculations made within the statutory maximum. See cases cited therein, including United States v. Francis, 367 F.3d 805, 820 (8th Cir. 2004).

That the term "statutory maximum" did not apply to Federal Sentencing Guidelines sentencing factors seemed to be bolstered by the Supreme Court's decision in Harris v. United States, 536 U.S. 545 (2002) where the Court held that Apprendi did not prohibit judicial fact finding as it related to application of mandatory minimum sentences.

Blakely, of course, significantly changed the legal landscape by holding that the term "statutory maximum" used in Apprendi meant the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant". 124 U.S. at 2533.

The Blakely Court specifically left open the issue as to whether its holding applied to the Federal Sentencing Guidelines. Reasonable jurists clearly differed as to whether the Supreme Court would so hold. As the Sixth Circuit in Humphress noted:

> That the federal judiciary has been deeply divided on the issue of whether the rule announced in Blakely applies to the Federal Guidelines lends further support to the conclusion that Booker announced a new rule.

398 F.3d at 861. The Second, Fourth, Fifth, Sixth and Eleventh Circuits held that Blakely did not apply to the Federal Sentencing Guidelines. See United States v. Mincey, 380 F.3d 102 (2nd Cir. 2004); United States v. Hammond, 378 F.3d 426 (4th Cir. 2004) (en banc); United States v. Pineiro, 377 F.3d 464 (5th Cir. 2004); United States v. Koch, 383 F.3d 436 (6th Cir. 2004) (en banc); United States v. Reiss, 382 F.3d 1308, 1310 (11th Cir. 2004). The Seventh Circuit in United States v. Booker, 375 F.3d 508 (7th Cir. 2004) and Ninth Circuit in United States v. Ameline, 376 F.3d 967, 984 (9th Cir. 2004) held to the contrary. This Circuit's jurisprudence on the issue is also illustrative. The panel decision in United States v. Mooney held that Blakely applied to the Guidelines. That decision was vacated for re-hearing en banc.

2004 WL 1636960 (8th Cir. July 23, 2004 vacated and re-hearing en banc granted August 6, 2004). Moreover, the lack of certainty is further demonstrated in Booker itself, where the sharply divided Court issued a 5-4 decision.

The extent of the judicial divergence on the issue clearly demonstrates that the resolution of this issue was not apparent to all reasonable jurists. Therefore, the rule in Booker is new.

**B. Booker Was Not A Watershed Procedural Rule**

The final issue is whether Booker announced a "watershed" procedural rule.[2] Based upon the Supreme Court's decision in Schriro v. Summerlin, 124 S. Ct. 2519 (2004), Booker cannot be considered such a rule. Schriro involved the issue whether Ring v. Arizona, 122 S.Ct 2428 (2002) was a watershed rule under Teague. In Ring, the Court had held that an Arizona statute which required the trial judge to make findings as to the predicate aggravating

---

[2]The Supreme Court recently emphasized how rare the "watershed rule" exception to Teague is meant to be. In pointing out that the Court has never found a watershed rule the Court stated:

> The second exception is for watershed rules of criminal procedure implicating the fundamental fairness in accuracy of a criminal proceeding. We have repeatedly emphasized the limited scope of the second Teague exception, explaining that it is clearly meant to apply only to a small core of rules requiring observance of those procedures that ... are implicit in the concept of ordered liberty. And, because any qualifying rule would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge, it should come as no surprise that we have yet to find a new rule that falls under the second Teague exception.

Beard, 124 S.Ct. at 2513-14.

factors authorizing imposition of the death penalty violated Apprendi and the Sixth Amendment right to jury. The issue in Schriro was whether Ring was a watershed rule, thus permitting its application on collateral review. The Court held it was not, as Ring did not implicate the fundamental fairness and accuracy of the criminal proceeding. 124 S.Ct. at 2522. Of significant interest here, the Court found that the choice between judges and juries as fact finders does not make a fundamental difference for the purposes of Teague analysis. 124 S.Ct. at 2525.

Therefore the Court should hold that Booker does not apply retroactively to collateral proceedings.

CONCLUSION

For all the above reasons, the defendant's § 2255 petition should be dismissed. Further, there is no legal issue significant enough here to warrant a Certificate of Appealability.

Dated: April 8, 2005

Respectfully submitted,

THOMAS B. HEFFELFINGER
United States Attorney

s/James E. Lackner
BY: JAMES E. LACKNER
Assistant U.S. Attorney
Attorney ID Number 59298